OPINION OF THE COURT
Memorandum.
The order of the Appellate Division should be affirmed.
The victim and defendant Terrance Williams became friends in July 2010. Their friendship turned intimate sometime later in the summer, when they engaged in anal sexual conduct. During their early sexual encounters, the victim and defendant used protection; however, they eventually had unprotected sex. The first time this happened, the victim reached for a condom only to have defendant take the condom away from him. The victim asked defendant four times if it was safe for them to engage in unprotected sex, and defendant reassured him that it was. Prior to this occasion, the victim and defendant had frequently discussed the human immunodeficiency virus (HIV) and the need to be careful to avoid infection.
In October 2010, defendant informed the victim that he might be HIV positive. Defendant explained that a previous sexual partner of his was infected by HIV and that the two had engaged in unprotected sex. Defendant urged the victim to get tested for HIV Shortly after this, in November 2010, the victim broke off his relationship with defendant. Then in February 2011, the victim became very ill, experiencing nausea, vomiting, diarrhea, and a severe sore throat, among other symptoms. He learned that he was HIV positive, and that his symptoms were a byproduct of his body’s inability to fight infection. Since August 2011, the victim has taken medication to stave off infection. Without this medication, he would eventually develop acquired immunodeficiency syndrome (AIDS).
In April 2011, two months after the victim found out that he was HIV positive, defendant sent a letter to him through social media. In the letter, defendant admitted that he had been diagnosed as HIV positive before he and the victim became intimate. Defendant expressed remorse about lying, saying “i want to start by saying that i sincerely apologize for giving you hiv.” Further, “i made my biggest mistake the night i said i *1131 didnt want to use a condom knowing my status but still being so deep in love with you that i wanted us to be one person . . . i was selfish and i was more so concerned with my own false happiness than you [sic] health.” The victim contacted the police.
In his subsequent appearance before the grand jury, the victim testified that he must take medication for the rest of his life, and that the medicine, combined with his psychological reaction to his HIV diagnosis, results in anxiety, nausea, mood swings, inability to stay awake, rashes and other symptoms. Based on the victim’s testimony and that of the detective who interviewed defendant and a physician who is an expert on HIV and AIDS, the grand jury charged defendant with one count of first-degree reckless endangerment (Penal Law § 120.25) and one count of third-degree assault (Penal Law § 120.00 [2]). Defendant moved to dismiss both counts of the indictment on the ground of legal insufficiency. By decision and order dated August 10, 2012, Supreme Court reduced the count of first-degree reckless endangerment to second-degree reckless endangerment (Penal Law § 120.20), and otherwise denied defendant’s motion.
First-degree reckless endangerment consists of four elements: conduct that creates a grave and unjustifiable risk of another person’s death; awareness and conscious disregard of that risk; the grave and unjustifiable risk is of a nature and degree that constitutes a gross deviation from the standard of conduct a reasonable person would observe in the situation; and the conduct occurred under circumstances evincing a depraved indifference to human life. Supreme Court ruled that, based on the physician’s testimony about advances in medical treatment, neither HIV nor AIDS poses a grave risk of death. It additionally determined that there was insufficient evidence that defendant acted with the requisite depraved mental state.
The People appealed, and in November 2013 the Appellate Division affirmed (111 AD3d 1435 [4th Dept 2013]). The Court concluded that the grand jury evidence, when viewed in the light most favorable to the People, did not make out a prima facie case that defendant acted with the wanton cruelty, brutality, or callousness required to establish depraved indifference toward a single victim. The Court also agreed with Supreme Court that the grand jury evidence, again viewed in the light most favorable to the People, did not show that defendant’s conduct presented a grave risk of death to the victim. A Judge of this Court granted the People leave to appeal (22 NY3d 1091 [2014]), and we now affirm.
*1132 Depraved indifference is a culpable mental state which means the same thing in the murder and reckless endangerment statutes (People v Feingold, 7 NY3d 288, 290 [2006]). As we explained in People v Suarez (6 NY3d 202, 212 [2005]), “[a] defendant may be convicted of [a depraved indifference crime] when but a single person is endangered in only a few rare circumstances”; specifically, where the defendant exhibits “wanton cruelty, brutality or callousness directed against a particularly vulnerable victim, combined with utter indifference to the life or safety of the helpless target of the perpetrator’s inexcusable acts” (id. at 213). Here, there is no evidence that defendant exposed the victim to the risk of HIV infection out of any malevolent desire for the victim to contract the virus, or that he was utterly indifferent to the victim’s fate (see People v Lewie, 17 NY3d 348, 359 [2011] [the defendant did not exhibit depraved indifference when she failed to stop the abuse of her child; although “the evidence . . . show(ed) that (she) cared much too little about her child’s safety, it cannot support a finding that she did not care at all”]). Without a doubt, defendant’s conduct was reckless, selfish and reprehensible. Under our case law, though, this is not enough to make out a prima facie case of depraved indifference.*
Finally, we need not and do not decide whether HIV infection creates a grave and unjustifiable risk of death in light of the medical advances in treatment made since the scourge of AIDS was first identified.

 The dissent objects that “[i]t is irrelevant that defendant may have expressed remorse six months after he and the victim had unprotected sex” (dissenting op at 1133). But “[t]he mens rea of depraved indifference to human life can, like any other mens rea, be proved by circumstantial evidence” (Feingold, 7 NY3d at 296). Certainly, defendant’s unprompted confession and expression of guilt and contrition constitute circumstantial evidence of his state of mind when he disingenuously persuaded the victim to engage in unprotected sex. The point here, though, is that there is simply no evidence in the grand jury record, circumstantial or otherwise, of wanton cruelty, brutality or callousness toward the fate of a single victim.