People v Rudge (2020 NY Slip Op 03949)





People v Rudge


2020 NY Slip Op 03949


Decided on July 16, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 16, 2020

109537

[*1]The People of the State of New York, Respondent,
v
Franklin Rudge, Appellant.

Calendar Date: June 11, 2020

Before: Egan Jr., J.P., Lynch, Devine, Pritzker and Reynolds Fitzgerald, JJ.


Adam G. Parisi, Schenectady, for appellant.
Andrew J. Wylie, District Attorney, Plattsburgh (Jaime A. Douthat of counsel), for respondent.



Egan Jr., J.P.
Appeal from a judgment of the County Court of Clinton County (Favreau, J.), rendered May 25, 2017, upon a verdict convicting defendant of the crimes of burglary in the first degree, menacing in the first degree, criminal possession of a weapon in the third degree and assault in the third degree.
In October 2016, defendant was charged in a four-count indictment with burglary in the first degree, menacing in the first degree, criminal possession of a weapon in the third degree and assault in the third degree stemming from an altercation he had with his then-girlfriend (hereinafter the victim), following which he allegedly unlawfully entered her home carrying an axe and threatened the lives of the victim and her family. Following a jury trial, defendant was convicted as charged. He was thereafter sentenced, as a second felony offender, to a prison term of 15 years, to be followed by five years of postrelease supervision, on his conviction for burglary in the first degree and to lesser concurrent prison terms on the remaining convictions. Defendant appeals.
Defendant contends that his convictions for burglary in the first degree and assault in the third degree are not supported by legally sufficient evidence and are against the weight of the evidence. Initially, although defendant preserved his legal sufficiency challenge with regard to his conviction for assault in the third degree, defendant failed to preserve said challenge with respect to his conviction for burglary in the first degree as his motion for a trial order of dismissal did not specifically address the error presently raised on appeal (see People v Gray, 86 NY2d 10, 19 [1995]; People v Baber, 182 AD3d 794, 795 [2020]; People v Green, 141 AD3d 1036, 1037 [2016], lv denied 28 NY3d 1072 [2016]). Notwithstanding, to the extent that defendant also challenges the weight of the evidence with respect to this conviction, "we necessarily determine whether all of the elements of the charged crime[] were proven beyond a reasonable doubt" (People v Harris, 162 AD3d 1240, 1242 [2018] [internal quotation marks and citations omitted], lv denied 32 NY3d 937 [2018]; see People v Delbrey, 179 AD3d 1292, 1292-1293 [2020], lv denied 35 NY3d 969 [2020]).
When reviewing the legal sufficiency of the evidence, "this Court must view the evidence in the light most favorable to the People and evaluate whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crimes charged" (People v Burwell, 183 AD3d 173, 175 [2020] [internal quotation marks, brackets and citations omitted]; see People v Wilson, 164 AD3d 1012, 1013-1014 [2018]). In contrast, when conducting a weight of the evidence review, this Court must "view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not, [then] weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v McCoy, 169 AD3d 1260, 1261-1262 [2019] [internal quotation marks and citations omitted], lv denied 33 NY3d 1033 [2019]; see People v Bleakley, 69 NY2d 490, 495 [1987]). As relevant here, to be found guilty of assault in the third degree, the People were required to prove that, "[w]ith intent to cause physical injury to another person, [defendant] cause[d] such injury to such person or to a third person" (Penal Law § 120.00 [1]). Physical injury, in turn, is defined as "impairment of physical condition or substantial pain" (Penal Law § 10.00 [9]). "A person is guilty of burglary in the first degree when he [or she] knowingly enters or remains unlawfully in a dwelling with intent to commit a crime therein, and when, in effecting entry or while in the dwelling or in immediate flight therefrom, . . . [u]ses or threatens the immediate use of a dangerous instrument" (Penal Law § 140.30 [3]).
The evidence at trial established that, in August 2016, the victim lived with her parents, her aunt, her sister and her sister's two children at a house located in the Village of Rouses Point, Clinton County. According to the victim, she had been dating defendant for about a month and, on August 3, 2016, her father picked up both her and defendant in Pennsylvania and drove them to Rouses Point, where defendant was going to stay with the victim and her family for a few days. At approximately 11:30 p.m. on August 5, 2016, defendant and the victim were sitting on the back porch of the house when defendant became enraged after the victim told him that she could not procure marihuana for him. Defendant threw a cigarette and soda bottle at the victim and began punching her "in the back of [her] head, just all over [her] body, just swinging at [her]." After being struck, the victim told defendant that he had to leave the house and that he was no longer welcome. Defendant refused to leave and threatened that he was "going to get an axe and he was going to kill [the victim] and [her] whole family." He then left the back porch, headed to the adjacent detached garage and subsequently emerged with an axe, at which point the victim retreated into the house and locked the door separating the back porch from the kitchen.
Defendant re-entered the back porch holding the axe while pacing around and continuing to threaten to kill the victim and her family. The victim could see defendant through a kitchen window and took a photograph of him holding the axe. The victim thereafter further retreated into the living room and observed defendant walk around the side of the house holding the axe, whereupon he threatened to damage the victim's parents' vehicle if she did not let him in. The victim then ran upstairs "panicked" and "scared" and, after a brief conversation with her sister, called 911. While on the phone with the 911 operator, defendant removed a screen from an exterior window and gained entry to the house. Upon seeing defendant in the house, the victim locked herself in a bathroom and waited for police to arrive. The police arrived shortly thereafter and found defendant in the house, sitting at the kitchen table. The police obtained statements from the victim and the victim's sister and defendant was placed under arrest.
With respect to the victim's injuries, contrary to defendant's assertion, we find that there is a valid line of reasoning and permissible inferences from which a rational person could conclude that victim suffered a physical injury as a result of defendant's assault (see Penal Law § 10.00 [9]; People v Diaz, 163 AD3d 110, 113-114 [2018], lv denied 32 NY3d 1110 [2018]; People v Conklin, 158 AD3d 973, 975 [2018], lv denied 31 NY3d 1080 [2018]; People v Hicks, 128 AD3d 1221, 1222 [2015], lv denied 26 NY3d 930 [2015]). The victim testified that she was in a lot of pain after being struck by defendant. Photographs introduced into evidence corroborated the victim's account and demonstrated that she sustained a large bruise and redness on her upper left arm, which the victim's sister characterized as being "terribly bruised," and which the victim testified took three to four weeks to heal.
Turning to the weight of the evidence, although a different verdict would not have been unreasonable, we are satisfied that defendant's burglary and assault convictions are not against the weight of the evidence (see People v Horton, 181 AD3d 986, 988-989 [2020]; People v Henry, 169 AD3d 1273, 1274 [2019], lv denied 33 NY3d 1070 [2019]). We reject defendant's contention that, because he was initially an invitee to the victim's home, it was reasonable for him to believe that, after assaulting the victim, inflicting injury, being instructed to leave and thereafter being locked out of the house and angrily threatening to kill the victim and her family with an axe, he nevertheless retained the license to enter or remain on the premises (see People v Henry, 169 AD3d at 1274; People v Jackson, 151 AD3d 1466, 1468 [2017], lv denied 30 NY3d 950 [2017]). Instead, viewing this evidence in a neutral light, together with the reasonable inferences that may be drawn therefrom, and giving the appropriate deference to the jury's factual findings and credibility assessments, we are satisfied that jury's verdict as to the two challenged convictions is in accord with the weight of the evidence (see People v Henry, 169 AD3d at 1274; People v Jackson, 151 AD3d at 1468; People v Bethune, 65 AD3d 749, 751-752 [2009]).
Defendant next contends that he was denied the right to a fair trial based upon certain remarks made by the prosecutor during his summation. Defendant's claim of prosecutorial misconduct, however, was not preserved for appellate review as he failed to render contemporaneous objections to the subject statements when they were made (see People v Fragassi, 178 AD3d 1153, 1156-1157 [2019], lv denied 34 NY3d 1128 [2020]; People v Wynn, 149 AD3d 1252, 1255 [2017], lv denied 29 NY3d 1136 [2017]). Nor are we persuaded that defense counsel's failure to timely object to these comments constituted ineffective assistance of counsel (see People v Drayton, 183 AD3d 1008, 1011-1012 [2020]). All but one of the statements challenged by defendant constituted either fair comment on the evidence or were a direct response to defendant's summation (see People v Meadows, 183 AD3d 1016, 1022 [2020]; People v Horton, 181 AD3d at 996) and, taken collectively, did not constitute "a flagrant and pervasive pattern of prosecutorial misconduct so as to deprive defendant of a fair trial" (People v Johnson, 176 AD3d 1392, 1396 [2019] [internal quotation marks and citations omitted], lvs denied 24 NY3d 1129, 1131 [2020]). Accordingly, viewing the record in its totality, we are satisfied that defendant was provided meaningful representation (see People v Benevento, 91 NY2d 708, 714-715 [1998]; People v Johnson, 183 AD3d 77, 90-91 [2020], lv denied 35 NY3d 993 [2020]).
Lynch, Devine, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is affirmed.